IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CAROLYN HARRIS, | § § | |
| Plaintiff, | § § | No. 4:22cv2837 |
| VS. | § § | Jury Trial Demanded |
| G4S SECURE SOLUTIONS (USA), INC., | § § | |
| Defendant. | § | |

## **APPENDIX**

## **TO**

## **PLAINTIFF'S RESPONSE TO MOTION TO STRIKE JURY DEMAND**

## **TABLE OF CONTENTS**

1   *Zavala v. Aaron's, Inc.*, 2015 U.S. Dist. LEXIS 127775 (E.D. Tex. 2015)

2   *Hudson v. Lincare Inc.*, 2021 U.S. Dist. LEXIS 177086 (W.D. Tex. 2021)

 Caution
As of: November 10, 2022 6:16 PM Z

# Zavala v. Aaron's, Inc.

United States District Court for the Eastern District of Texas, Sherman Division

September 23, 2015, Decided; September 23, 2015, Filed

CASE NO. 4:15-CV-123

**Reporter**
2015 U.S. Dist. LEXIS 127775 *; 2015 WL 5604766

NOEMI ZAVALA v. AARON'S, INC.

## Core Terms

jury waiver, negotiate, Manual, parties, courts, conspicuous, Acknowledgment, unilateral, suggests, represented by counsel, bargaining power, intelligent, waive, business acumen, jury trial, unambiguous, bargaining, disparity, signature, terms

**Counsel:** [*1] For Noemi Zavala, Plaintiff: Ronald R Huff, Attorney at Law, Sherman, TX.

For Aaron's, Inc., Defendant: Lawrence J McNamara, LEAD ATTORNEY, Ford & Harrison LLP - Dallas, Dallas, TX; Jennifer Nicole Jones, Ford & Harrison - Dallas, Dallas, TX.

**Judges:** AMOS L. MAZZANT, UNITED STATES DISTRICT JUDGE.

**Opinion by:** AMOS L. MAZZANT

## Opinion

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Aaron's, Inc.'s Opposed Motion to Strike Plaintiff's Jury Demand (Dkt. #8). After considering the relevant pleadings, the Court finds the motion should be denied.

**BACKGROUND**

Noemi Zavala was hired as a Sales Manager for Aaron's, Inc.'s Sherman, Texas store in May 2012 (Dkt. #8-1). Upon hiring in 2012, Plaintiff was provided with a 2011 Policy Manual. Plaintiff acknowledged receipt of the manual by executing a written 2011 Policy Manual Acknowledgment (Dkt. #8-1).

In 2013, Defendant implemented an electronic policy training and acknowledgment system (Dkt. #8-1). Electronic records show Plaintiff acknowledged a 2013 Policy Manual as well as a 2014 Policy Manual (Dkt. #8-2).

The three Policy Manuals contained nearly identical dispute resolution policies that included express jury waivers (Dkt. #8-3). The 2011 Dispute Resolution [*2] Policy reads as follows:

> In consideration of your employment, continued employment, and/or wage increase, you and the Company each agree that in the event either party (or its representatives, successors or assigns) brings an action in a court of competent jurisdiction relating to your recruitment, employment, or termination of employment from the Company, the plaintiff in such actions agrees to waive his, her or its rights to a trial by jury, and further agrees that no demand, request or motion will be made for trial by jury. Instead, the case will be tried to a judge without jury.

The 2011 and 2013 Policy Manual Acknowledgments included the following disclaimer in bold, underlined print above the signature line:

> I agree to the terms of the Dispute Resolution Policy. In consideration of my employment with the Company, I agree to waive my right to a jury trial for any dispute I may have regarding my employment. Instead, I agree that the case will be tried to a judge without a jury.

The 2014 Policy Manual Acknowledgment included a similar disclaimer, with additional information regarding class action lawsuits.

On April 17, 2015, Defendant filed a motion to strike Plaintiff's jury demand [*3] (Dkt. #8). On May 13, 2015, Plaintiff filed a response (Dkt. #12). On May 26, 2015, Defendant filed a reply (Dkt. #13). On June 2, 2015, Plaintiff filed a sur-reply (Dkt. #14).

**LEGAL STANDARD**

Although the right of trial by jury in civil actions is protected by the Seventh Amendment to the Constitution, that right, like other constitutional rights, may be waived by prior written agreement of the parties. Commodity Futures Trading Comm. v. Schor, 478 U.S. 833, 848, 106 S. Ct. 3245, 92 L. Ed. 2d 675 (1986). Waivers of constitutional rights must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences. Brady v. United States, 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). Furthermore, courts will indulge every reasonable presumption against a waiver of that right. Jennings v. McCormick, 154 F.3d 542 (5th Cir. 1998) (citing Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 57 S. Ct. 809, 81 L. Ed. 1177 (1937)). In determining whether a contractual waiver of the right to a jury trial is valid, the court must examine whether the waiver was made in a knowing, voluntary, and intelligent manner. Leasing Serv. Corp. v. Crane, 804 F.2d 828, 832-33 (4th Cir. 1986). The court examines the following factors to determine if a waiver was made knowingly, voluntary and intelligently: (1) whether the contract was negotiable, (2) the conspicuousness of the provision, (3) the relative bargaining power of the parties, (4) whether the waiving party was represented by counsel, and (5) the business acumen of the party opposing the waiver. Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc., 56 F. Supp. 2d 694 (E.D. La. 1999).

There is a circuit **[*4]** split on the issue of which party bears the burden of proving that the waiver was knowing and voluntary. While the Fifth Circuit has never expressly decided the issue, several district courts within the Fifth Circuit have held that the burden falls on the party seeking enforcement of the waiver. See RDO Fin. Servs. Co. v. Powell, 191 F. Supp. 2d 811 (N.D. Tex. 2002); Branch Banking&Tr. Co. v. Price, No. 2:11CV23-KS-MTP, 2011 U.S. Dist. LEXIS 129367, 2011WL5403403 at *4 (S.D. Miss. Nov. 8, 2011); Charles v. Nasser Heavy Equip., Inc., 2008 U.S. Dist. LEXIS 81115, 2008 WL 3992648 at *2 (S.D. Miss. Aug. 22, 2008). Additionally, the majority of federal courts have held that the party seeking enforcement of an express waiver has the burden of showing that the consent of the party making the waiver was knowing, voluntary, and intelligent. See Telum, Inc. v. E.F. Hutton Credit Corp., 859 F.2d 835 (10th Cir. 1988); Leasing Serv. Corp., 804 F.2d 828; Nat'l Equip. Rental, Ltd. v. Hendrix, 565 F.2d 255 (2d Cir. 1977) (party seeking enforcement of jury waiver bears the burden of demonstrating waiver was knowing and voluntary); Dreiling v. Peugeot Motors of America, Inc., 539 F. Supp. 402 (D. Colo. 1982); National Westminster Bank, U.S.A. v. Ross, 130 B.R. 656, 667 (S.D.N.Y.1991), aff'd, 962 F.2d 1 (2d Cir.1992); but see K.M.C. Co. v. Irving Tr. Co., 757 F.2d 752, 755 (6th Cir. 1985) (party objecting to jury waiver bears burden of demonstrating waiver was not knowing and voluntary). The Court finds these cases persuasive, and finds that Defendant has the burden of showing that Plaintiff knowingly and voluntarily waived the right to a jury trial.

**ANALYSIS**

*Conspicuousness of the Provision*

Courts determine the conspicuousness of jury waiver clauses on a case-by-case basis, and consider factors such as the typeface, **[*5]** the length of the document, and the location of the waiver clause. See, e.g., Leasing Serv. Corp., 804 F.2d at 833 (finding jury waiver provision in fine print in the middle of a thirty-eight line paragraph on reverse side of standardized document, sufficiently conspicuous because the contract was only two pages long); Nat'l Westminster Bank, 130 B.R. at 667 (holding that the jury waiver was knowing and voluntary when the provision was only two inches above the signature and printed in small but entirely legible text). Unambiguous language also suggests that a jury waiver is sufficiently conspicuous. Hopple v. Prospect Mortg., LLC, No. 3:13-cv-00137, 2013 U.S. Dist. LEXIS 186974 at *7.

The waiver in the Policy Manual Acknowledgments is conspicuous because it is in its own separate paragraph, located immediately above the signature line, is printed in the same size font as the rest of the agreement, is in bold, underlined type, and is clear and unambiguous.

*Representation by Counsel*

Several courts have acknowledged that representation by counsel is less probative than other factors. See Westside-Marrero Jeep Eagle, 56 F.Supp.2d at 709 (determining that this factor lacked probative value where plaintiff was represented by counsel, but counsel never actually read the contract); see also Pellerin Const., Inc. v. Witco Corp., No. CIV. A. 00-0465, 2001 U.S. Dist. LEXIS 2934, 2001 WL 258056 at *2 (E.D. La. Mar. 14, 2001). Other courts do not consider it at all. See Price v. Cushman & Wakefield, Inc., 808 F. Supp. 2d 670, 705 (S.D.N.Y. 2011) (considering **[*6]** negotiability, conspicuousness, bargaining power, and business acumen, but not the presence of counsel); see also TransFirst Holdings, Inc. v. Phillips, No. CIVA 3:06CV2303P, 2007 U.S. Dist. LEXIS 20483, 2007 WL 867264 at *3 (N.D. Tex. Mar. 22, 2007). Plaintiff was not represented by counsel; however, the jury waiver was unambiguous, and the Defendant did nothing to deprive Plaintiff of representation. Accordingly, the Court finds that this factor favors neither party.

*Business Acumen*

Courts consider the business and professional experience of the party seeking to avoid enforcement of a waiver. *See Brown v. Cushman & Wakefield, Inc., 235 F. Supp. 2d 291 (S.D.N.Y. 2002)* (finding that a Harvard-educated M.B.A.'s strong educational and business background meant that she could have negotiated the clause if she tried). A party has sufficient business acumen if they are able to understand the import of a jury waiver provision. *Pellerin Const., Inc., 2001 U.S. Dist. LEXIS 2934, 2001 WL 258056 at \*2*. An understanding of the clear and unambiguous language of the jury waiver requires no extraordinary level of sophistication. *G & C Const., LLC v. Kiewit Louisiana Co., No. CIV.A. 11-2566, 2012 U.S. Dist. LEXIS 22638, 2012 WL 601887 at \*3 (E.D. La. Feb. 23, 2012)*. Defendant does not claim that Plaintiff's background particularly prepared her to understand the significance of the waiver, but the language of the jury waiver is unambiguous. Accordingly, the Court finds that this factor **[\*7]** favors neither party.

*Negotiability of the Contract/ Relative Bargaining Power*

In determining the negotiability of a contract, courts consider whether there was actual negotiation over the terms of the contract. *Morgan Guar. Tr. Co. of New York v. Crane, 36 F. Supp. 2d 602, 604 (S.D.N.Y. 1999)*. Plaintiff does not imply that she made any attempt to negotiate the terms of the contract (Dkt. #12). However, just because the terms of an agreement were not negotiated does not mean that the agreement is not negotiable. *Morgan Guar. Tr. Co. of New York, 36 F. Supp. 2d at 604*.

Inequality in bargaining power suggests a jury waiver was not executed knowingly or intelligently. *Dreiling v. Peugeot Motors of America, Inc., 539 F. Supp. 402 (D. Colo. 1982)*. "To invalidate a waiver provision . . . the bargaining differential must be the kind of extreme bargaining disadvantage or gross disparity in bargaining position that occurs in certain exceptional situations." *Westside-Marrero Jeep Eagle, 56 F. Supp. 2d at 709* (citation omitted). Even in the context of employment, a 'take it or leave it' situation alone does not make the waiver unenforceable or unconscionable. *Green v. Wyndham Vacation Resorts, Inc., 2010 U.S. Dist. LEXIS 145652 \*13 (M. D. Fla. July 12, 2010)* (citing *Winiarski v. Brown&Brown, Inc., No. 5:07-CV-409-OC-10GRJ, 2008 U.S. Dist. LEXIS 35799, 2008 WL1930484 at \*2 (M.D. Fla. May 1, 2008)*). Plaintiff did not present any evidence suggesting that she could not have found employment with another company that did not require a jury trial waiver. *Green, 2010 U.S. Dist. LEXIS 145652 at \*13*.

Thus, the relative bargaining **[\*8]** positions of the parties in their roles as employer and employee are not so disparate as to render the jury waiver unenforceable under these circumstances alone.[1] However, the fact that a contract is unilateral suggests that there is a disparity in bargaining power and/or the parties did not have an opportunity to negotiate.[2]

An agreement is unilateral when only one party is prohibited from being able to request a jury trial. A wholly one-sided waiver "demonstrates that [a party] lacked a realistic opportunity to negotiate at arms-length." *RDO Financial, 191 F. Supp. 2d at 814*. When determining if both parties are bound by a jury waiver agreement, courts examine the language of the clause. *Hopple, 2013 U.S. Dist. LEXIS 186974 at \*7* (finding that an agreement written in the second person addresses only the signatory's rights). Additionally, a jury waiver agreement that contains a signature of only one party or a signature line for only one party suggests that only one party was bound. *Id.* Unilateral waivers should not be enforced because they **[\*10]** indicate that the agreement was not actually negotiable. *See Branch Banking & Tr. Co., No. 2:11CV23-KS-MTP, 2011 U.S. Dist. LEXIS 129367, 2011 WL 5403403 at \*2* (finding the jury waiver agreement enforceable because it applied equally to plaintiff as well as defendant);

---

[1] Plaintiff argues that a reasonable person could infer from the nature of the "at will" agreement that failure to sign the acknowledgment would result in immediate termination. The Court agrees with *Rivera v. Aaron Rents, Inc.* that the possibility of being fired/not hired alone is not sufficient to constitute the type of disparity in bargaining position that would nullify the agreement. *8:07-CV-2190T30TGW, 2008 U.S. Dist. LEXIS 16988, 2008 WL 638353 (M.D. Fla. March 5, 2008)*. However, the Court differentiates its analysis from that of *Rivera v. Aaron Rents, Inc.* because the *Rivera* court failed to consider whether the agreement was unilateral or bilateral.

[2] While other courts have been inconsistent and unclear in explaining if a unilateral jury waiver reflects a disparity in bargaining power or a lack of an opportunity to negotiate, the Court finds that regardless of which factor the unilateral nature of a contract affects, it reflects **[\*9]** that the jury waiver was not executed in a knowing and voluntary manner. *See, e.g. Branch Banking & Tr. Co., No. 2:11CV23-KS-MTP, 2011 U.S. Dist. LEXIS 129367, 2011 WL 5403403 at \*4* (finding that the bilateral nature of the agreement demonstrated that no gross disparity in bargaining power existed); *Cummings Properties, LLC v. Promethean Surgical Devices, LLC, No. CIV.A. 08-11327-GAO, 2010 U.S. Dist. LEXIS 79794, 2010 WL 3122834 at \*1 (D. Mass. Aug. 9, 2010)*; *RDO Financial, 191 F. Supp. 2d at 814* (finding that a unilateral agreement demonstrates a lack of an opportunity to negotiate); *Hopple, 2013 U.S. Dist. LEXIS 186974 at \*8* (finding that a unilateral agreement existed, and thus the agreement was not enforceable but not specifying which factor was affected).

*Cummings Properties, LLC*, 2010 U.S. Dist. LEXIS 79794, 2010 WL 3122834 at *1 (holding that jury waiver applied equally to both parties, suggesting that it was enforceable).

The terms of the jury waiver appear bilateral in the 2011, 2013, and 2014 Policy Manuals, stating "...you and the Company each agree that in the event either party...brings an action...the plaintiff in such action agrees to waive his, her or its rights to a trial by jury..." (Dkt. #8-3). However, these terms are illusory because the Defendant retained the right to change the manual.[3] *See Torres v. S.G.E. Mgmt., L.L.C., 397 F. App'x 63 (5th Cir. 2010)* (finding arbitration provision is illusory, under Texas law, since arbitration clause could be eliminated or modified upon notice and the agreement did not contain any clause preventing a modification from applying to disputes arising before the modification). Thus, the terms from the 2011, 2013, and 2014 Policy Manuals shall be disregarded for the purposes of the Court's analysis.[4]

The language in the 2011, 2013, and 2014 Policy Manual Acknowledgments suggests a unilateral waiver.[5] Even though the language of the jury waiver clause is in the first person, and the 2011 Policy Manual Acknowledgment is signed by both the employee and the manager, the plain language of the clause suggests that it only bound the employee (Dkt. #8-1). The contract only bound Plaintiff's right to request a jury trial, and is therefore unilateral. The Court finds that the jury waiver should not be enforced because it reflects that the parties were in disparate bargaining positions **[*12]** and/or there was no meaningful opportunity for the parties to negotiate.

## CONCLUSION

Although the jury waiver is conspicuous, consideration of Plaintiff's business acumen and representation by counsel do not favor either party. However, the jury waiver is unilateral, which suggests that either there was disparity in the bargaining power of the parties or the parties lacked an opportunity to negotiate the terms of the jury waiver. The unilateral nature of the contract demonstrates that the jury waiver was not knowingly, voluntarily and intelligently entered and is thus unenforceable. It is therefore **ORDERED** that Defendant's Opposed Motion to Strike Plaintiff's Jury Demand (Dkt. #8) is hereby **DENIED**.

**SIGNED this 23rd day of September, 2015**.

/s/ Amos L. Mazzant

AMOS L. MAZZANT

UNITED STATES DISTRICT JUDGE

---

**End of Document**

---

[3] "I acknowledge that I have read and understand the following policies contained in the Company's Policy Manual . . . Dispute **[*11]** Resolution Policy . . . I also understand that these policies are not all-encompassing and that they may be changed at any time, with or without notice" (Dkt. #8-1).

[4] Plaintiff argues that the evidence Defendant has put forth regarding Plaintiff's electronic execution of the 2013 and 2014 Policy Manual Acknowledgment is insufficient. Defendant argues that the subsequent electronic Acknowledgments were valid and that the repeated nature of the Plaintiff's agreement suggests that it was knowing and voluntary. Regardless, the agreements allegedly executed in 2013 and 2014 were unilateral and thus are unenforceable.

[5] "I agree to the terms of the Dispute Resolution Policy. *In consideration of my employment with the Company*, I agree to waive **my** right to a jury trial for any dispute I may have regarding *my employment*. Instead, I agree that the case will be tried to a judge without a jury." (Dkt. #8-1) (emphasis added).

No *Shepard's* Signal™
As of: November 8, 2022 8:50 PM Z

# *Hudson v. Lincare Inc.*

United States District Court for the Western District of Texas, Austin Division

September 17, 2021, Decided; September 17, 2021, Filed

1:20-CV-928-RP

**Reporter**
2021 U.S. Dist. LEXIS 177086 *; 2021 WL 4255094

BRITTANY HUDSON, Plaintiff, v. LINCARE INC., Defendant.

## Core Terms

jury trial waiver, jury waiver, negotiate, weighs, courts, bargaining power, disparity, signature, jury trial, conspicuous, parties, unilateral, coworkers, suggests, n-word, waived

**Counsel: [*1]** For Brittany Hudson, Plaintiff: Holt Major Lackey, LEAD ATTORNEY, Ellwanger Law LLP, Austin, TX; Jay D. Ellwanger, Ellwanger Law LLLP, Austin, TX.

For Lincare Inc., Defendant: David M. Kalteux, LEAD ATTORNEY, PRO HAC VICE, FordHarrison LLP, Tampa, FL; Rachel Z. Ullrich, LEAD ATTORNEY, Ford Harrison, Dallas, TX.

**Judges:** DUSTIN M. HOWELL, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** DUSTIN M. HOWELL

## Opinion

### ORDER

Before the Court is Defendant Lincare Inc.'s Motion to Strike Jury Trial Demand, Dkt. 20. Plaintiff Brittany Hudson filed a response to the motion, Dkt. 21, and Lincare filed a reply, Dkt. 23. Having considered the parties' briefs, the record, and the relevant law, the Court will deny the motion.

### I. BACKGROUND

This is an employment discrimination case. Hudson, a Black woman, worked as a sales representative for Lincare from April 2015 to August 2019. Dkt. 17, at 3. At the time she was hired, Hudson had completed six years of college, during which she worked as research assistant, and had held one job after college. Dkt. 20-1. As a condition of her employment with Lincare, Hudson signed a jury waiver on April 8, 2015. Dkt. 20-2. In relevant part, the jury waiver states that "Your signature below indicates that you **[*2]** understand that as a condition of your hire or continued employment, any lawsuit that you may bring against Lincare or any of its subsidiaries or related entities will be decided by a judge, without a jury." *Id.*[1] The same jury waiver provision was also included in Lincare's employee handbook, which was provided to Hudson on June 29, 2015. Dkts. 20-3, 20-4, 20-5.

Hudson began working for Lincare's Austin-based office in December 2018, and thereafter "was subjected to harassment and discrimination on the basis of her race and color." Dkt. 17 at 3. Hudson alleges that her manager, Tina Averra, belittled and threatened her, and made inappropriate comments about Hudson's appearance, claiming she was entitled to do so because her daughter-in-law is Black. *Id.* at 3-4. Other coworkers "incessant[ly]" called Hudson the n-word, and used other racial slurs to refer to Hudson. *Id.* at 4-5 ("coworkers would make racist remarks, such as, 'Why's Brittany so loud and black?' and 'Brittany's ghetto.'"); *see id.* ("Plaintiff was also told by coworkers that another secretary, Patricia Ruiz, had called her 'Aunt Jemima.'").

During one meeting where Hudson asked her coworkers to stop using the n-word at work, **[*3]** secretary Anicia Torres responded, "Bitch, I'm gonna say [n-word] when I want. I'm gonna say [n-word] if I want to say [n-word]. Sue me bitch." *Id.* Manager Casey Greenway, present at the time, declined to do anything in response to Torres' racist outburst. *Id.* at 5. Hudson further alleges that when she reported the racism she

---

[1] The full jury trial waiver states: "Your signature below indicates that you understand that as a condition of your hire or continued employment, any lawsuit that you may bring against Lincare or any of its subsidiaries or related entities will be decided by a judge, without a jury. To the extent permitted by law, you are knowingly, voluntarily, and intentionally waiving any right you may have to a trial by jury in any litigation arising out of your employment with Lincare or any of its subsidiaries or related entities." Dkt. 20-2.

encountered to human resources, they failed to initiate an investigation or take disciplinary action. *Id.* Instead, Hudson alleges that Lincare retaliated against her for complaining of her coworker's racist comments. *Id.* at 5. Hudson's harassers continued to verbally abuse her at work, refused to work with her, sabotaged her work, and blocked her from receiving commissions she was owed. *Id.* Hudson alleges that she was constructively discharged by Lincare due to its failure to take any action in response to "intolerable conditions." *Id.*

Hudson initiated this action on September 9, 2020, alleging that Lincare discriminated against her based on her race in violation of *Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et. seq.*, the *Texas Employment Discrimination Act, Tex. Lab. Code §§ 21.001 et seq.*, and the *Civil Rights Act of 1866, 42 U.S.C. §§ 1981 et seq.* Dkt 1; Dkt. 17, at 5-10. On March 12, 2021, Lincare filed the instant motion to strike Hudson's jury demand from her first amended complaint, arguing that Hudson "knowingly and voluntarily [*4] waived her right to a jury trial by executing a valid jury trial waiver during her employment." Dkt. 20, at 1.

## II. LEGAL STANDARDS

The *Seventh Amendment of the Constitution* preserves the common law right to a jury trial in civil suits. *U.S. Const. amend. VII*. The right, however, may be waived by prior written agreement of the parties. *Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 848, 106 S. Ct. 3245, 92 L. Ed. 2d 675 (1986)*; *RDO Fin. Servs. Co. v. Powell, 191 F. Supp. 2d 811, 813 (N.D. Tex. 2002)*. Such written agreements to waive the right to jury trial are generally enforceable against parties who bring suit, as long as the waiver was made knowingly, voluntarily, and intelligently. *Jennings v. McCormick, 154 F.3d 542, 545 (5th Cir. 1998)*. Even so, courts should "indulge every reasonable presumption against waiver." *Aetna Ins. Co. v. Kennedy ex rel. Bogash, 301 U.S. 389, 393, 57 S. Ct. 809, 81 L. Ed. 1177 (1937)*; *RDO, 191 F. Supp. 2d at 813* ("courts will indulge every reasonable presumption against a waiver of that right.").

In determining whether a jury-trial waiver was made knowingly, voluntarily, and intelligently, courts in the Fifth Circuit generally balance four factors: "(1) whether there was gross disparity in bargaining power between the parties; (2) the business or professional experience of the party opposing the waiver; (3) whether the opposing party had an opportunity to negotiate contract terms; and (4) whether the clause containing the waiver was inconspicuous." *MWK Recruiting, Inc. v. Jowers, No. 1:18-CV-444-RP, 2020 U.S. Dist. LEXIS 134891, 2020 WL 4370138, at *2 (W.D. Tex. July 30, 2020)* (quoting *RDO, 191 F. Supp. 2d at 813-14*); *Servicios Comerciales Lamosa, S.A. de C.V. v. De la Rosa, 328 F. Supp. 3d 598, 619-20 (N.D. Tex. 2018)*. Although the Fifth Circuit has never addressed [*5] the issue, courts in this circuit have found that the party seeking to enforce the waiver bears the burden of demonstrating a valid waiver. *MWK, 2020 U.S. Dist. LEXIS 134891, 2020 WL 4370138 at *2*; *RDO, 191 F. Supp. 2d at 813*.

## III. DISCUSSION

Lincare moves to strike Hudson's jury demand from her first amended complaint, arguing that the four factors outlined above weigh in favor of enforcing the jury trial waiver Hudson signed at the initiation of her employment with Lincare. Dkt. 20, at 11. Hudson responds that the executed jury waiver is unenforceable because it was "an adhesion contract imposed upon a very junior employee as a condition of her employment," and as such the four factors weigh against its enforceability in this case. Dkt. 21, at 10. The Court will address each of the relevant factors in turn.

### A. Gross Disparity in Bargaining Power

The Court first finds that a gross disparity in bargaining power existed between Hudson and Lincare such that the first factor weighs against enforcement of the jury trial waiver. While Lincare is correct that the employer-employee relationship alone is insufficient to demonstrate a gross disparity in bargaining power between the parties, "a unilateral jury waiver suggests a sufficient disparity of bargaining power." *MWK, 2020 U.S. Dist. LEXIS 134891, 2020 WL 4370138 at *2.*; *Zavala v. Aaron's, Inc., No. 4:15-CV-123, 2015 U.S. Dist. LEXIS 127775, 2015 WL 5604766, at *3 (E.D. Tex. Sept. 23, 2015)* ("the [*6] fact that a contract is unilateral suggests that there is a disparity in bargaining power and/or the parties did not have an opportunity to negotiate."). Here, the jury trial waiver Hudson signed was unilateral because it only included a signature line for Hudson, was only signed by her, and its language explicitly stated that it applied to her as the signatory of the waiver. Dkt. 20-2, at 1 ("any lawsuit that **you** may bring against the Company or any of its subsidiaries or related entities will be decided by a judge, without a jury." (emphasis added));[2]

---

[2] Defendant inexplicably emphasize the second half of this sentence when quoting the waiver in their reply, while ignoring the first half of the sentence which uses "you" to refer to Plaintiff as the signatory of the jury trial waiver. (Dkt. 23, at 2) ("any lawsuit that you may bring against the Company or any of its subsidiaries or related entities **will be decided by a judge, without a jury**.").

Zavala, 2015 U.S. Dist. LEXIS 127775, 2015 WL 5604766 at *4 ("a jury waiver agreement that contains a signature of only one party or a signature line for only one party suggests that only one party was bound.").

Lincare cites Blunt v. Prospect Mortg., LLC, No. 3:13-CV-1595-P, 2014 U.S. Dist. LEXIS 191099, 2014 WL 12585646, at *1 (N.D. Tex. Feb. 25, 2014), for the proposition that courts may find a jury trial waiver bilateral even in the absence of any textual indication that it applies to both parties. Yet in *Blunt*, the court found that there was no gross disparity of bargaining power where an employee sought to enforce a jury trial waiver against an employer who had drafted the waiver. *Id*. Here, in contrast, it is Hudson, Lincare's employee, who seeks to invalidate a jury trial **[*7]** waiver she played no part in drafting or, as explained below, negotiating. Moreover, the jury trial waiver, which was drafted by Lincare, specifically refers to Hudson's waiver of her right to a jury trial and does not include Lincare's signature. Dkt. 20-2, at 1 ("Your signature below indicates that you understand that as a condition of your hire or continued employment, any lawsuit that you may bring against Lincare or any of its subsidiaries or related entities will be decided by a judge, without a jury."); Hopple v. Prospect Mortg., LLC, No. EP-13-CV-00137-DCG, 2013 U.S. Dist. LEXIS 186974, 2013 WL 12321456, at *3 (W.D. Tex. Nov. 13, 2013) (finding jury trial waiver one-sided where employer did not sign the waiver, and the language of the waiver expressly provided that the signatory waived his right). Because "the fact that a contract is unilateral suggests that there is a disparity in bargaining power," the Court finds that the first factor weighs against enforcement of the jury trial waiver. Zavala, 2015 U.S. Dist. LEXIS 127775, 2015 WL 5604766, at *3.

### B. Business or Professional Experience

The second factor weighs slightly in favor of enforcement of the jury trial waiver. When assessing plaintiff's business acumen, courts may refer to the employee's education and work experience. Jones v. Tubal-Cain Hydraulic Sols., Inc., No. No. 4:16-CV-01282, 2017 U.S. Dist. LEXIS 144493, 2017 WL 3887235, at *4 (S.D. Tex. Sept. 5, 2017). Here, Hudson attended college, held multiple jobs while studying, and held one job after **[*8]** college before working for Lincare—rendering her more sophisticated than the plaintiff in *Jones*, a high school dropout the court deemed competent enough to understand "the import of the jury waiver provision." Dkt. 20-1; Jones, 2017 U.S. Dist. LEXIS 144493, 2017 WL 3887235, at *4 (plaintiff had sufficient professional experience because "while there is nothing in [his] background that would indicate he was uniquely qualified to understand the import of the jury-waiver provision, the language employed is unambiguous"). At the same time, most cases finding an employee to have sufficient business experience to tilt this factor in favor of enforcement dealt with highly skilled employees—here Hudson was starting her second job after college in an entry-level sales position. *See, e.g.,* MWK Recruiting, Inc. v. Jowers, 2020 U.S. Dist. LEXIS 134891, 2020 WL 4370138, at *3 (W.D. Tex. July 30, 2020) (finding "ample business and professional experience" where plaintiff was a lawyer with years of experience as an "accomplished" legal recruiter); Montalvo v. Aerotek, Inc., No. 5:13-CV-997-DAE, 2014 U.S. Dist. LEXIS 164884, 2014 WL 6680421, at *15 (W.D. Tex. Nov. 25, 2014) (plaintiff found to have sufficient business acumen where she was college educated and with fifteen years of work experience).

Yet, "[a]n understanding of the clear and unambiguous language of the requires no extraordinary level of sophistication," and unlike the defendant in **[*9]** *Zavala*, which did not claim that its former employee's "background particularly prepared her to understand the significance of the waiver," here Lincare claims that Hudson "was educated, experienced, and capable of reading the plain language in the Jury Trial Waiver." Dkt. 20, at 8; Dkt. 20-1; Zavala, 2015 U.S. Dist. LEXIS 127775, 2015 WL 5604766, at *2. Hudson is not quite as sophisticated as other individuals found to have sufficient business acumen, but the jury trial waiver provision was unambiguously worded, Hudson was educated, she had been previously employed, she was "able to understand the import of a jury waiver provision," Jones, 2017 U.S. Dist. LEXIS 144493, 2017 WL 3887235, at *4. This factor, therefore, weighs slightly in favor of enforcement of the jury waiver provision.

### C. Opportunity to Negotiate

The Court finds that the third factor weighs against enforcement of the jury trial waiver. "In determining the negotiability of a contract, courts consider whether there was actual negotiation over the terms of the contract." Zavala, 2015 U.S. Dist. LEXIS 127775, 2015 WL 5604766, at *3. Here, there was no negotiation of the jury trial waiver—it was provided to Hudson as "part of a stack of paperwork to sign ... as a condition of [her] employment." Dkt. 21-1, at 1; *see* Dkt. 20-2, at 1 ("as a condition of your hire or continued employment, any lawsuit **[*10]** that you may bring against Lincare or any of its subsidiaries or related entities will be decided by a judge, without a jury."). Although Lincare is correct that a failure to negotiate the terms of a jury trial waiver does not render the instrument non-negotiable, the unilateral nature of the waiver "demonstrates that [Hudson] lacked a realistic opportunity to negotiate at arms-length." RDO, 191 F. Supp. 2d at 814; De la Rosa, 328 F. Supp. 3d at

621 ("Lack of actual negotiations, however, does not necessarily mean the contract was not negotiable."). Because the jury trial waiver only applied to Hudson and there was no actual negotiation of the waiver, the Court finds that this factor weighs against enforcement of the jury trial waiver. Zavala, 2015 U.S. Dist. LEXIS 127775, 2015 WL 5604766 at *5 ("the jury waiver is unilateral, which suggests that ... the parties lacked an opportunity to negotiate the terms of the jury waiver."); RDO, 191 F. Supp. 2d at 814 ("wholly one-sided" jury waiver demonstrated that employee "lacked a realistic opportunity to negotiate at arms-length with" employer); cf. MWK, 2020 U.S. Dist. LEXIS 134891, 2020 WL 4370138 at *3 (bilateral jury waiver provisions imply negotiability).

### D. Conspicuousness

The final factor weighs in favor of enforcement of the jury trial waiver, as it was presented to Hudson as a plainly worded one-page document that included the waiver **[*11]** provisions in bold right above the signature line. Dkt. 20-2. Hudson cites no authority for her suggestion that the jury trial waiver was inconspicuous because it was included "among a stack of other documents she was handed to sign" on her first day of employment and she does not remember signing it. Dkt. 21, at 9. In contrast, courts have found jury waiver provisions such as the one at issue here—a conspicuously labeled provision set apart from other agreements that included bolded language just above the signature line—to be sufficiently conspicuous to favor enforcement. Jones, 2017 U.S. Dist. LEXIS 144493, 2017 WL 3887235, at *3 ("In determining the conspicuousness of a contract provision, courts ask whether the provision was in bold-face or conspicuous type."); Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., 56 F. Supp. 2d 694, 708 (E.D. La. 1999) ("clearly written ... block print" waiver provisions "just above the signature line" sufficiently conspicuous). Here, the jury waiver here was not difficult "for the average person to read," and as such, the conspicuousness of the jury waiver provision weighs in favor of its enforcement. RDO, 191 F. Supp. 2d at 814.

\* \* \*

The jury waiver's conspicuousness weighs in favor of its enforcement. Hudson's business experience weighs only slightly in favor of enforcement. The disparity in bargaining power and lack **[*12]** of opportunity to negotiate, however, both weigh against a finding that Hudson knowingly and voluntarily waived her right to a jury trial. Though this is a somewhat close case, because the Court "will indulge every reasonable presumption against a waiver," the Court will deny Lincare's motion to strike Hudson's jury demand. RDO, 191 F. Supp. 2d at 813; MWK, 2020 U.S. Dist. LEXIS 134891, 2020 WL 4370138, at *1 ("courts should 'indulge every reasonable presumption against waiver'" (citing Aetna, 301 U.S. at 393)).

### IV. CONCLUSION

Based on the foregoing, **IT IS ORDERED** that Lincare's Motion to Strike Jury Trial Demand, Dkt. 20, is **DENIED**.

**SIGNED** on September 17, 2021.

/s/ Dustin M. Howell

DUSTIN M. HOWELL

UNITED STATES MAGISTRATE JUDGE

**End of Document**